JOSEPHINE NOON, ADMINISTRATRIX, ETC., RESPONDENT,
v. DELAWARE, LACKAWANNA AND WESTERN RAIL-
ROAD COMPANY, APPELLANT.

Argued October 18, 1928—Decided February 4, 1929.

For the appellant, *Frederic B. Scott.*

For the respondent, *David A. Veeder* and *James B. Sheean.*

The opinion of the court was delivered by

KATZENBACH, J.    The defendant below, the Delaware, Lackawanna and Western Railroad Company (hereinafter called the defendant), appeals from a judgment entered against it in an action under the Federal Employers' Liability act to recover damages for the death of George Noon, an employe of the railroad company.   The deceased was a freight

brakeman and a member of a freight crew at the time of the accident which resulted in his death. The place of the accident was on or near the westbound track of the defendant near the plant of the Athenia Steel Company located near Clifton, New Jersey, which is between the cities of Hoboken and Paterson. At this part of the railroad there are two main tracks. The southerly track is called the eastbound track and the northerly track the westbound track. A siding starts from the eastbound track and enters the plant of the steel company. The siding commences about three hundred feet eastwardly from the office building of the steel company. The switch stand lever operating the switch to connect the eastbound track with the siding is located on the southerly side of the eastbound track. There are three tracks within the steel company's premises, a storage track, a commercial track and a coal track. The storage track is a continuation of the siding running parallel with the eastbound track and about twelve feet distant therefrom. It is within the enclosure of the steel company. The commercial and coal tracks branch off from the siding at points south of the storage track.

On April 27th, 1925, at about four-fifty P. M. (standard time), when it was still daylight, a train upon which the deceased was a brakeman, composed of three cars, a caboose, and engine, came east from Paterson on the eastbound track. The engine led but faced Paterson. It was, therefore, being operated backwards. All three cars were to be placed on tracks of the steel company and a car on the commercial track within the steel company's premises was to be picked up. There were three switches, one from the main track to the siding, a second connecting with the storage track, and a third leading from the commercial track to the coal track. The movements of the drilling operation with reference to these cars were as follows: (1) a stoppage of the train on the eastbound track west of the main switch. The two rear cars were temporarily dropped at this point. (2) A movement westward on the siding and the kicking of the remaining car of the three on the coal switch. (3) The backing out of the coal switch for the purpose of going on the commercial track and picking up a

car standing on that track. (4) The backing out to the main track with this car. (5) A forward movement westwardly on the main track and the picking up of the two standing cars. (6) The backing of all three cars to a point east of the main switch. (7) Pushing of the two cars picked up to the commercial track which had been emptied. All of these movements from one to six inclusive had been done prior to the accident. The drill train was on the main track east of the switch. Noon had set the switch immediately after movement number six. At this time Noon went across the main eastbound track at or near the switch to a point in the space eight and one-half feet wide between the eastbound and westbound tracks. He boarded his own train. Noon signaled to the engineman to come ahead. The engineman went ahead. Noon then jumped off and went over to the westbound track and stood there communicating with the conductor. He was struck and instantly killed by an express train traveling on the westbound track. The train was three minutes late. There was no eye witness of his death. When last seen alive he was on the first or second car of the drill train having just given the come-ahead signal.

The action was predicated on the failure of the defendant to use due care for Noon's safety, by lookout or warning from the crew of the drill train or the crew of the express train which presumably struck and killed him. At the trial the defendant rested on the plaintiff's case. Motions to nonsuit and for the direction of a verdict for the defendant were denied and exceptions taken. The trial judge left the case to the jury under a charge that it was for the jury to determine as a question of fact whether the members of the crew of which Noon was a member were negligent in failing to exercise such due and reasonable care as the circumstances required and whether the engineer of the express train failed to use the due and reasonable care that the occasion demanded by not giving a signal to warn Noon that the express train was approaching. The jury rendered a verdict for the plaintiff. A rule to show cause was allowed the defendant. This rule reserved the exceptions taken at the trial. The rule was

discharged. The judgment was then appealed to this court upon the exceptions reserved.

Of the exceptions taken the appellant relies upon the refusal of the trial court to nonsuit or direct a verdict for the defendant. The claim is that there was no act of negligence on the part of the defendant proven by the plaintiff. In actions based on the Federal Employers' Liability act negligence must be proven. It will not be presumed. The negligence may be that of the officers, agents, or employes of the carrier, or negligence due to a defect or insufficiency in the cars, engines, * * * track * * *, or other equipment of the carrier. There is no claim in the present case of any defective or insufficient appliances. The plaintiff relied upon acts of employes to establish negligence. The plaintiff contends that some member of the drill crew should have apprised Noon of the approach of the express train. At the time of the accident each member of the crew was engaged in the performance of his duties. To place upon each member of a drill crew the duty of watching the movements of every other member of the crew and warning him of an approaching danger would result in a crew performing little, if any, work, as the time of the crew would be taken up in the discharge of such a duty. Noon was in a place of safety. He appears to have voluntarily placed himself in a position of danger. No movement of the train being drilled required him to go on the westbound track. Such an act on his part could not have been reasonably expected. There was no reason why he should be warned not to stand on the westbound track. He was familiar with the work. He had as much opportunity as the other members of the crew to know that a train was due to arrive on the westbound track. It is said the position was taken by Noon because of a curve in the tracks at this point. The curve, from the photographs, is a slight curve and Noon's position on the westbound track cannot be explained by the presence of so slight a curve. We see no act or failure of duty on the part of any member of the crew of the drill train which charged the defendant with negligence.

It is next said that the engineer of the express train failed to discharge his duty by not giving by whistle or bell a warn-

ing to Noon. There is no evidence as to how long Noon was on or near the westbound track when the express train passed. He may have just stepped on the track as the westbound train passed. The engineer may have had no opportunity to see him on the track, or if he did see him it may have been too late to give any warning. The evidence is barren of any fact which would show that the engineer of the express train had an opportunity to warn Noon in time to avert the accident. Neither were any facts testified to from which such an inference can be drawn. We fail to see in what respect the engineer of the train was negligent.

Upon this phase of the case the plaintiff offered various rules of the defendant which she maintained bore upon the subject of the defendant's negligence. These rules were admitted over objection. Notwithstanding the objections we will consider the rules for purposes of discussion as properly admitted in evidence. One was rule 526 which read as follows:

"They must stop and inquire respecting any signal not understood, and on delayed regular trains and extra trains must keep sharp lookout for trackmen and hand cars sounding the whistle at short intervals where the view is obscured."

It will be noted that this rule applies to trackmen. There is a difference between trackmen and trainmen. We think the rule applicable to those working upon a track. Trainmen are those having duties upon a train. This distinction is recognized. We think this rule imposed no duty to keep a lookout for Noon who was a trainman and not a trackman.

The next rule is No. 530, reading as follows:

"Trains must proceed with caution through yards and station limits, particularly at night. Enginemen must keep in mind the location of main track switches. If a light cannot be seen on a switch where a light is usually displayed, they must reduce speed sufficiently to stop before reaching the switch, unless the track is seen to be clear. They must report all such failures to the superintendent."

There was no evidence that the accident happened in any yard or within any station limits. The Clifton station was approximately half a mile away from the switch near which

the accident happened. The part of the rule with reference to station limits is not applicable. Industrial sidings from a main track do not make a yard. The place where the accident occurred was not a railroad yard in the ordinary sense of the term and therefore was not within the rule.

Rule 553 was received in evidence. This rule reads as follows:

"They must maintain as far as practicable regular and uniform speed, avoiding excessive speed on descending grades and run with due caution where the track is under repair and at all points where there is reason to apprehend danger."

The track at the place where the accident occurred was not on a descending grade and was not being repaired. We have considered the question as to whether there was any reason to apprehend danger and have held that there was none. This rule, therefore, has no application to the present case.

We have examined the other rules offered and find their provisions inapplicable. We see no reason to comment upon them.

The respondent claims that the accident occurred within a few hundred feet of a crossing and that a signal should have been given by the engineer for this crossing. The evidence shows that the crossing so-called was not a public crossing. Those employed in factories broke down the fence at this point and habitually trespassed on the tracks. Under these circumstances there was no duty to give the signals of approach customary for a public crossing.

A contention is also made that the express train was passing a train standing on an adjacent track and that this required the ringing of the engine bell on the express train. The drill train was not standing at the time of the accident. It was moving. The movement was on the siding and not on the adjacent track. This contention is, therefore, without merit.

Counsel for the respondent have been most diligent in gathering and submitting many authorities upon the subjects of exercising ordinary care to provide a safe place and methods of work for an employe, the care due trainmen and trackmen, the change from normal to abnormal conditions, and the duty

of a railroad company under such circumstances, &c., which we have examined with especial care because of the importance of this case to the plaintiff and those dependent upon her. We have, however, been unable to find in the case under consideration evidence sufficient to hold the defendant liable for negligence. The motion to nonsuit or the motion for the direction of a verdict should have been granted.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—THE CHANCELLOR, TRENCHARD, KALISCH, LLOYD, JJ. 4.

*For reversal*—PARKER, KATZENBACH, WHITE, VAN BUS-KIRK, KAYS, HETFIELD, DEAR, JJ. 7.